Candee *v.* Skinner.

CHARLES T. CANDEE *vs.* WILLIAM SKINNER.

No principle is more equitable or better settled than that a trustee shall make no personal profit from the funds entrusted to his care beyond a reasonable compensation for his services, and he is bound to make a prudent and reasonably speedy investment of them with a view to an accruing increase and profit. And the same rule applies to an agent receiving moneys from his principal for investment.

But this rule has no application to an executor under ordinary circumstances, he being a temporary custodian holding the funds for distribution, and not using them, and under bond for the faithful discharge of his duties.

And it is especially inapplicable generally to a garnishee, who occupies a compulsory position without compensation; and he ought not to be charged with interest unless it appears that he has actually derived some advantage from the use of the money, or has held it in bad faith, or made unreasonable delay, or otherwise acted in violation of his duty.

Where the court below found that a garnishee had occasionally, during four years for which he held the funds, mingled them with his own for a short time and in no considerable amount, but had had the whole amount always at command and ready to be paid if required, and that the money in his hands had never earned any interest, and the court had rendered judgment in favor of the garnishee, holding him not chargeable with interest, it was held that there was no error.

The plaintiff, an executor, was factorized for a debt due from the estate to *L. M* claimed the debt by an assignment from *L* and requested the plaintiff not to pay to the factorizing creditor, but compel him to bring a scire facias, against which *M* would defend, and, with the defendant as surety, *M* gave the plaintiff a joint and several bond to indemnify him against all cost upon the scire facias. The suit was pending four years, at the end of which the factorizing creditor obtained judgment for his claim and costs against the present plaintiff, who thereupon sued the defendant upon his bond of indemnity. The defendant claimed that the plaintiff had so used the money lying in his hands as garnishee as to be chargeable with interest upon it, which interest would more than cover the amount for which the defendant was liable on the bond. Held that *M*, having requested the plaintiff to keep possession of the money during the litigation, could not have charged him with interest upon it, and that the defendant stood in the same position with him.

DEBT on a penal bond; brought to the Court of Common Pleas of New Haven County, and tried to the court on the general issue, with notice, before *Stoddard, J.* Judgment for the plaintiff and motion for a new trial by the defendant. The case is sufficiently stated in the opinion.

*Ives* in support of the motion, cited *Woodruff* v. *Bacon*, 35 Conn., 104; *Lyles* v. *Hatton*, 6 Gill & J., 122; *Thomas* v. *Frederick County School*, 9 id., 115; *King* v. *Berry*, 2 Green Ch., 44; *Bourne* v. *Mechan*, 1 Gratt., 292; *Monteith's Exr.* v. *Baltimore Association*, 21 Maryl., 426; *Duffy* v. *Duncan*, 35 N. York, 187; *Keech* v. *Speakman*, 1 Penn. Law Jour. Reps., 72; *Landis* v. *Scott*, 32 Penn. S. R., 495; *Bruner's Appeal*, 57 id., 46; *Farmer's Distributees* v. *Farmer's Exrs.*, 26 Ala., 671; Perry on Trusts, § 468; Drake on Attachments, § 665.

*Bronson*, with whom was *Bennett*, contra, cited *Selleck* v. *French*, 1 Conn., 32; *Jones* v. *Mallory*, 22 id., 392; *Oriental Bank* v. *Tremont Ins. Co.*, 4 Met., 1; *Bickford* v. *Rich*, 105 Mass., 340.

PHELPS, J.   The motion in error in this case raises the question whether the plaintiff, as executor of the will of Leverett Candee, deceased, and as defendant in the scire facias brought against him following a process of foreign attachment, is liable to pay interest on the money attached in his hands and retained by him pending the subsequent litigation. The facts are numerous and somewhat complicated, and a brief preliminary statement of them will render less difficult an easy comprehension of the question involved in its relation to the facts.

J. P. Lindley was a creditor of the insolvent estate of Leverett Candee, and presented a claim for $9,390.81, which was allowed by the commissioners. Lindley was indebted to John A. Peck in about the sum of $850, for the recovery of which Peck, on the 21st day of September, 1866, brought foreign attachment, demanding $1200, and factorized the plaintiff as executor, in which suit he recovered judgment and obtained execution, and within sixty days caused demand with the same to be duly made on both Lindley and the plaintiff. Before such demand Lindley assigned his claim against said estate to Cyrus Manville, who claimed that his assignment was prior to the service of the foreign attachment

by Peck, and requested the plaintiff not to pay the amount in his hands or any part of it on the execution obtained by Peck; and Manville as principal, and the defendant as surety, entered into a joint and several bond to the plaintiff, conditioned to save him harmless from all costs which Peck should thereafter recover in a scire facias to be brought by him against the plaintiff. Lindley brought a petition for a new trial against Peck in his original suit, which remained in court from February, 1868, to November, 1872, when Lindley was non-suited, and at the same term of court Peck recovered judgment against the plaintiff in said scire facias for $1,163.88 damages, and $255 costs, which sums were paid in full by the plaintiff; and thereupon the plaintiff brought the present action against the defendant as surety for said Manville and joint and several maker with him of said bond. If the plaintiff is bound to account to the defendant for interest on the amount retained by him, it is admitted it will fully cancel the claim he makes against the defendant in this suit.

The finding by the Court of Common Pleas shows that the entire indebtedness of the estate was $138,862.42, on which dividends amounting in all to fifty-five and a half per cent. have from time to time been paid by the executor pursuant to the orders of the court of probate, excepting the $1200 sequestered by the foreign attachment process brought by Peck against Lindley. The plaintiff as executor retained this amount in his hands pending the litigation between Lindley and Peck, which continued several years.

The plaintiff kept a bank account as executor from August, 1867, to January, 1872, which for a large part of the time showed but a small balance in his favor, much less than the sum covered by said attachment, but that sum was always at his command, and the funds belonging to the creditors of the estate were always within his reach, and could have been paid by him at any time, and were paid when ordered by the court of probate. He occasionally mixed to some extent the funds of the estate with his own for a short time, and in no considerable amount, but was unable to state precisely when

or in what amounts, and the money of the estate in his hands at no time earned any interest.

The Court of Common Pleas has found some facts with regard to the state of the plaintiff's bank account as executor which very strongly incline us to the suspicion that he used a large portion of the amount attached for his private business purposes, and that this continued for a large part of the time during which the attachment and subsequent proceedings remained in force, but the conclusions of fact to which the court came substantially negative such an inference, and we must submit to those conclusions. Both precedent and principle forbid a revision by this court of the facts found in the record, and we cannot properly draw inferences from a portion of the finding inconsistent with the conclusions of fact to which the court which had the witnesses personally before it has deliberately come. They may be right upon the weight of the whole testimony, and it is to be presumed and taken that they are, but if wrong we have no power to re-try issues of fact and establish contrary results from those which have been settled by the previous adjudication of a court whose jurisdiction is unquestioned.

We think the case as it appears from the entire finding may be clearly distinguished in some of its most important features from *Woodruff* v. *Bacon*, 35 Conn. R., 98, on which the defendant mainly relies. The court in that case may well be regarded as having taken somewhat extreme ground in view of the facts which were found, but there was sufficient in the facts to show an entire mingling of the attached fund with the private moneys of the defendant and at times a deficiency in both combined to meet the demand of the foreign attachment creditor if it had been made; and the court held that, " as he had the use of a part of the fund, and treated it all as if it was his own, and did not keep it by itself, or so keep it that he could pay it to the rightful owner when called for, he ought to pay interest" on the whole. The court seem to have attached very considerable importance to the fact that the money sequestered was mingled with the private funds of the garnishee, and not kept entirely separate

and distinct. If this had been all that appeared it would be impossible to reconcile the decision with the weight of authority. The opinion in that case however shows that the court intended to place the liability of a garnishee to the payment of interest on the true ground of his having used the money in his private business, which is substantially negatived by the finding in this case, or, if not negatived, so dwarfed in time and amount and so uncertain as to become insignificant in its consequences, and to render too harsh the application of the principle adopted in *Woodruff* v. *Bacon*, requiring the payment of interest on the whole sum for the whole time, and at the same time too uncertain to furnish a satisfactory basis of apportionment; and it is to be observed that this part of the finding is accompanied by the further fact, that the whole amount was at the plaintiff's command and ready at all times to be paid over when it should be legally demanded.

No principle is more equitable or better settled in the law than that a trustee shall make no personal profit from the funds entrusted to his care beyond a reasonable compensation for his services, and he is bound to make a prudent and reasonably speedy investment of them with a view to an accruing increase and profit; and so also with an agent receiving moneys from his principal for the purpose of investment. If they are negligent in the performance of their trusts, and allow moneys to lie without investment for an unreasonable time, they are chargeable with interest. But this rule has no application to an executor under ordinary circumstances, who is a temporary custodian holding the assets of an estate for distribution only, and not using them, and under bond for the faithful discharge of his duties; and it is especially inapplicable generally to a garnishee, who occupies a compulsory position without commission or reward of any kind; unless it appears, or from the facts can be fairly presumed, that he has actually derived some advantage from the use of the money or received some interest or profit from its use by others. The tenure of his bailment, if that is a proper term, is entirely uncertain, and his principal obligation is to

keep safely, and be able on proper demand to deliver, the money or goods in his possession which the foreign attachment creditor has a right to claim. He cannot relieve himself of this obligation by payment into court, or by a premature delivery of the thing, and unless he is holding in bad faith, or making unreasonable delay, or acting in violation of some duty, or derives some pecuniary benefit from his position, he ought not to be accountable for interest. The mere fact that he does not keep the attached fund unmingled with his own, except so far as such commingling raises a presumption of its use by him, is of very slight importance as affecting his liability for interest.

The length of time in this case was indeed very unusual, but it was entirely uncertain. It was dependent on the continuance of a litigation which might at any time and unexpectedly determine, and this was a contingency for which the plaintiff was at all times bound to be prepared, and by which, for no fault of his, he should not be prejudiced.

We think there is also another reason why, in the absence of the use of this money by the plaintiff, the defendant's claim to an allowance by way of offset for interest is untenable. The defendant is surety of Manville in the bond in suit, and nothing can operate as a defence in his favor which would not also be a defence for Manville. *Bull* v. *Allen,* 19 Conn. R., 105. And the bond was joint as well as several, though declared on against the defendant for his several liability.

The plaintiff withheld payment on the execution obtained on the judgment in the original suit, at the request and for the benefit of Manville, to give him an opportunity to test the validity of his assignment from Lindley and his claim to priority over Peck under it. It is clear that Manville under these circumstances would not be heard to make a claim against the plaintiff for interest arising from the delay in consummating the process of garnishment, unless the money had been actually used. The delay was occasioned solely by his own act, which operated and was designed to keep sequestered in the plaintiff's hands the whole amount attached by Peck. The relation of the defendant as the surety of Man-

ville and joint maker with him of the bond, seems to be a complete answer to his claim to a right superior to that of his co-obligor and principal.

There is no error in the judgment of the Court of Common Pleas.

In this opinion the other judges concurred.