TRANS WORLD AIRLINES, INC.,
Plaintiff,

*vs.*

HUGHES TOOL COMPANY ET AL.,
Defendants,

ERNEST R. BREECH ET AL.,
Additional Defendants.

*New Castle, December 28, 1962.*

*Daniel L. Herrmann* of Hermann, Bayard, Brill & Gallagher, Wilmington, for additional defendant Ernest R. Breech.

*James M. Tunnell, Jr.,* and *G. Tyler Coulson,* of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Hughes Tool Co.

MARVEL, Vice Chancellor: Ernest R. Breech, whose stock in the Ford Motor Company was ordered seized earlier in this proceeding pursuant to the provisions of *Title* 10 *Del.C.* § 366 for the purpose of compelling his appearance to defend a claim filed against him by Hughes Tool Company, seeks the aid of this Court in having paid over to him some $45,000 of dividends recently declared out of earnings applicable to such seized stock. Mr. Breech takes the position that the order of sequestration here in issue makes no reference to such dividends and that in any event the Court in the exercise of its discretion should permit such moneys to be released to him inasmuch as property owned by him suffcient to compel his appearance (if he must appear) is already held, and as a practical matter the high federal tax rates applicable to his income require a prompt paying over by him of most of such cash dividends to the Internal Revenue Service in the form of income taxes.

By order of May 31st, 1962, entered on motion of Hughes Tool Company, Jacob Kreshtool was appointed sequestrator " * * * to seize and hold, pursuant to this and the succeeding paragraphs of this order, the property of said additional defendants in the State of Delaware, namely:

" * * * (d) All of the right, title and interest [1] of additional defendant Ernest R. Breech in and to shares of the common stock of Ford Motor Company, a Delaware corporation."

The order further provided

---

1. In *United States v. Loft, Inc.,* 25 *Del.Ch.* 363, 19 *A.2d* 721, cited by opposing counsel, the original order of sequestration directed the seizure of stock " * * * with all the rights belonging or appertaining to such shares of stock."

It is significant that a "supplementary" order of sequestration was applied for in this case, evidently directed towards seizure of dividends later declared on such stock.

"4. In the event that any of said additional defendants shall make a bona fide sale or sales of any of the aforesaid property and shall deposit with the Sequestrator the proceeds of said sale or sales, the property sequestered and seized and so sold will be released from such sequestration and seizure upon application to this Court; and in such event the proceeds of any such sale shall be held by the Sequestrator until further order of this Court in lieu of property initially seized and so sold; provided further that the proceeds of any such sale or sales shall be subject to investment and reinvestment by the Sequestrator in such property and upon such terms and conditions as may, from time to time, be directed in writing by the additional defendant whose property has been so sold; provided further that the property in which such proceeds are invested and reinvested (as well as uninvested proceeds of any sale of such property) shall be held by and in the name of the Sequestrator pursuant to the terms of this order and until further order of this Court."

It must first be noted that the carefully chosen language of paragraph 4 of the order of sequestration as well as the concomitant practice of requiring a nominal bond to be posted by the party making a claim against a non-resident are tailored to fit the custom of seizing corporate securities of non-residents and serve the purpose of minimizing the financial burdens cast not only on a non-resident whose Delaware property of such nature is attached but on the claimant himself.

In other words, while the primary purpose of the Delaware sequestration statute is to compel the appearance of a non-resident, a person whose corporate securities are seized in Delaware is normally given, as here, the right to control the investment of such seized property pending his appearance. Accordingly, the bonds required of the present claimant and of the sequestrator were fixed in a nominal amount. Here, I find no indication in the present order that the attaching party had in mind the seizure of any property of Mr. Breech's other than his actual interest in his Ford stock. No attempt was made to provide for seizure of dividends which might accrue on said stock nor was consideration given to the appropriate bonds to be required in such event.

Here, assuming that dividends to be declared and paid, (as opposed to contractual interest) are "property" subject to sequestration, *Weinress v. Bland,* 31 *Del.Ch.* 269, 71 *A.2d* 59, and that the cases having to do with attachment in aid of execution are pertinent to the type of equitable attachment here in issue (but compare *Savings Bank of Danbury v. Loewe,* 242 *U.S.* 357, 37 *S.Ct.* 172, 61 *L.Ed.* 360), I do not believe that the order of sequestration here entered is couched in language sufficiently broad to include dividends which had not been declared at the time the May 31st order was entered.

On notice an order may be submitted directing the sequestrator to disclaim any interest in the current but unpaid dividends accrued on seized stock of the Ford Motor Company owned by the additional defendant Ernest R. Breech and to cause the same to be released to such defendant.